**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|   |   |   |
|---|---|---|
| **WANDA J. COBB,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0353-WS-B** |
| | ) | |
| **TRACY HAWSEY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on the Motion to Dismiss (doc. 2) filed by defendants Tracy Hawsey and John Greene.  The Motion has been briefed and is ripe for disposition.[1]

**I.     Background.**

On or about April 16, 2007, plaintiffs Wanda J. Cobb and William Cobb filed a Complaint against defendants Tracy Hawsey (individually and in his former capacity as Sheriff of Conecuh County, Alabama) and John Greene (individually and in his former capacity as Deputy Sheriff of Conecuh County, Alabama) in the Circuit Court of Conecuh County, Alabama. The Complaint alleges that plaintiffs were indicted for murder in Conecuh County based on an investigation spearheaded by defendant Greene, but that the District Attorney subsequently dismissed those indictments after determining that they had been procured on the basis of false testimony by Greene to the grand jury.  (Complaint, ¶¶ 5-7.)  To bolster this contention, attached to the Complaint is a copy of a motion to dismiss filed by the District Attorney in state-court criminal proceedings in October 2005, moving for *nolle pros* of the criminal charges against Wanda Cobb based on the State's information that a portion of Greene's testimony to the grand

---

[1]     Also pending is Defendants' Motion to File Reply Brief Out of Time (doc. 9). The applicable briefing schedule provided that defendants' reply brief was due on or before June 14, 2007; however, defendants did not submit their reply until four days later, on June 18, 2007. Defendants' counsel asserts that a family medical situation prevented him from submitting the reply in a timely manner.  Under the circumstances, and given the brevity of the delay, the undersigned in its discretion **grants** the Motion to File Reply Brief Out of Time pursuant to Rule 6(b), Fed.R.Civ.P., and will consider the Reply Brief (doc. 10) as filed.

jury may have been untrue.  The Complaint further alleges that defendant Hawsey negligently hired and supervised Greene, and negligently continued to employ him despite notice that Greene had falsified his credentials to obtain his position as a Deputy Sheriff in Conecuh County.

Based on these allegations, the Complaint identifies the following four causes of action against both defendants: (1) a claim for malicious prosecution; (2) a claim for false arrest; (3) a claim for false imprisonment; and (4) a claim under 42 U.S.C. § 1983 alleging that Hawsey negligently failed to investigate Greene's credentials and negligently supervised and trained Greene, and that both defendants "knowingly presented or allowed the presentation of false testimony to the Grand Jury serving Conecuh County and as a consequence caused the indictment of the Plaintiffs for the offense of murder."  (Complaint, ¶ 27.)  The only relief sought in the Complaint is monetary damages in the sum of 5 million dollars, and there are no equitable components to the *ad damnum* clauses.[2]

On May 17, 2007, defendants filed a Notice of Removal (doc. 1) removing this action to this District Court and predicating subject matter jurisdiction on 28 U.S.C. § 1331, inasmuch as a federal question is clearly presented by the § 1983 cause of action.  Contemporaneously with filing the Notice of Removal, defendants submitted a Motion to Dismiss (doc. 2) arguing that defendants were entitled to absolute immunity in both their individual and their official capacities on the state-law causes of action and that the § 1983 claims should be dismissed because that section creates no substantive rights and the defendants do not qualify as "persons"

---

[2]        This action is one of several cases litigated in this District Court in the last two years alleging wrongdoing by defendant Greene as a Conecuh County Deputy Sheriff.  The others include *Sara Oswald Stoddard v. Tracey Hawsey and John Greene*, Civil Action 05-287-CG-M, which alleged that Greene illegally set up or investigated the plaintiff (a licensed attorney) for certain drug charges, suppressed exculpatory evidence, and conspired to charge the plaintiff falsely with a drug offense; and *Gerald Anderson v. John Greene and Tracey Hawsey*, Civil Action 05-393-WS-M, which alleged that Greene had entered the plaintiff's home in another county without permission, physically assaulted the plaintiff, and interrogated him without probable cause.  *Stoddard* remains pending at this time, but *Anderson* was dismissed earlier this year on settlement.  The same attorney who represented the *Stoddard* and *Anderson* plaintiffs also represents the plaintiffs in this action; likewise, Greene and Hawsey have been represented by identical counsel in all three actions.

with respect to the official capacity § 1983 claims.

## II.   Legal Standard.

On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must view the complaint in the light most favorable to the plaintiff. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Thus, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007). The rules of pleading require only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2), Fed.R.Civ.P. As the Supreme Court recently observed, while a complaint attacked by a Rule 12(b)(6) motion need not be buttressed by detailed factual allegations, the plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964-65 (2007). The rules of pleading do "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The Court's inquiry at this stage focuses on whether the challenged pleadings "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson*, 127 S.Ct. at 2200 (quoting *Bell Atlantic*, 127 S.Ct. at 1964).[3]

---

[3]      In their Response (doc. 8), plaintiffs assert that the Motion to Dismiss is premature because "the jurisdictional issue is bound up with the merits and resolution of said issue should be deferred to a consideration on the merits - after sufficient discovery has taken place." (Response, at 13.) Plaintiffs decry the consideration of defendants' Rule 12(b) arguments "in a vacuum and without the benefit of the discovery process that is necessary in all civil actions." (*Id.*) Of course, that's exactly the point of the onerous standard of review to which such motions are subjected, as outlined above. Contrary to the implication of plaintiffs' argument, it is entirely commonplace for federal district courts to consider and, where appropriate, grant Rule 12(b) motions in a vacuum and without the benefit of discovery. If, accepting all factual allegations in the Complaint as true, that pleading still suffers from an insuperable legal defect, then dismissal is warranted, notwithstanding the absence of discovery. Moreover, the Court expressly finds that any jurisdictional issues are not inextricably bound up with the merits here and that the purported legal defects identified by defendants' Motion can and should be resolved now, without awaiting the discovery process. The timing of defendants' Motion to Dismiss is appropriate under the Federal Rules of Civil Procedure and the specific circumstances of this case. Accordingly, the Motion to Dismiss is not premature, and it will not be deferred until after the close of discovery. *See generally Hunter v. Bryant*, 502 U.S. 224, 112

### III.    Analysis.

#### A.        *Official Capacity Claims.*

The Complaint purports to interpose federal and state claims against Hawsey and Greene in both their official and their individual capacities.  In response to defendants' contention in the Motion to Dismiss that the state-law official capacity claims are barred by sovereign immunity and the federal official capacity claims are precluded by Eleventh Amendment immunity, plaintiffs agree that dismissal of those claims is proper.[4]  Such concessions are prudent. Plaintiffs' state-law claims against defendants in their official capacities as Sheriff and Deputy Sheriff of Conecuh County are clearly barred by state sovereign immunity.  *See, e.g., Ex parte Haralson*, 871 So.2d 802, 805-06 (Ala. 2003) (explaining that a sheriff is an executive officer of the State and therefore immune from suit in executing the duties of his office under Article I, Section 14 of the Alabama Constitution of 1901, and that a deputy sheriff is immune to the same extent as a sheriff); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) ("Alabama sheriffs are considered arms of the state and protected by sovereign immunity in suits against them in their official capacity."); *Tinney v. Shores*, 77 F.3d 378, 383 (11th Cir. 1996) ("Under Alabama law, sheriffs and deputy sheriffs, in their official capacities and individually, are absolutely immune from suit when the action is, in effect, one against the state.").  And Eleventh Amendment principles clearly operate to bar plaintiffs' § 1983 claims for money damages against those defendants in their official capacities.  *See*, *e.g., Robinson v. Georgia Dept. of Transp.*, 966 F.2d 637, 640 (11th Cir. 1992) ("Congress, in passing § 1983, did not

---

S.Ct. 534, 536, 116 L.Ed.2d 589 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in the litigation.").  Finally, the Court rejects plaintiffs' assertion that on a motion to dismiss there is a "presumption ... that the Defendants acted in a manner that would not provide them immunity protection."  (*Id.* at 13.) The undersigned is aware of no authorities, and plaintiffs have cited none, that recognize such a presumption.  If anything, the presumption runs in the other direction.  *See Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) ("We must also keep in mind the fact that we generally accord ... official conduct a presumption of legitimacy.") (citation omitted).

    [4]        In particular, plaintiffs state in the "immunity" section of their brief that they are "willing to concede the 'official capacity' dismissals" and further indicate in the § 1983 portion of their brief that "Plaintiffs do agree to dismiss their claims against Deputy Greene and former-Sheriff Hawsey in their official capacity."  (Response, at 1, 9.)

intend to override the immunity guaranteed to the states by the Eleventh Amendment"); *Taylor v. Adams*, 221 F.3d 1254, 1256 (11th Cir. 2000) ("In their official capacity, however, Alabama sheriffs operating jails are state officers protected by Eleventh Amendment immunity" from § 1983 actions); *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1527 (11th Cir. 1990) (extending Alabama sheriff's Eleventh Amendment immunity to Alabama deputy sheriffs because they function as sheriff's alter ego).[5]

In light of the foregoing authorities and plaintiffs' acknowledgment that dismissal of their official capacity claims is appropriate, the Motion to Dismiss is **granted** with respect to plaintiffs' federal and state-law claims against defendants in their official capacities, and those claims are **dismissed**.

> **B.      State-Law Individual Capacity Claims.**

With respect to the state-law claims against Hawsey and Greene in their individual capacities, defendants maintain that such claims are barred by sovereign immunity principles. Pursuant to Article I, Section 14 of the Alabama Constitution of 1901, "the State of Alabama shall never be made a defendant in any court of law or equity." *Id.* "The wall of immunity erected by § 14 is nearly impregnable." *Ex parte Davis*, 930 So.2d 497, 500 (Ala. 2005) (citation omitted). In accordance with Section 14's sovereign immunity, which is otherwise known as State immunity, courts applying Alabama law have routinely held that sheriffs (and, by association, deputy sheriffs) are executive officers of the State who, with few exceptions, are absolutely immune from suit on state-law claims. *See Sheth v. Webster*, 145 F.3d 1231, 1236-39 (11th Cir. 1998) (recognizing that "absolute sovereign immunity" is afforded to sheriffs and deputy sheriffs under Alabama law). This outcome applies with equal force to claims brought against a sheriff or deputy sheriff in his individual capacity. Indeed, "[u]nder Alabama law, a

---

[5]      *See also Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) (district court correctly granted summary judgment on § 1983 official capacity claims because Alabama sheriff is state official protected by Eleventh Amendment immunity); *Browning v. City of Wedowee, Ala.*, 883 F. Supp. 618, 621 (M.D. Ala. 1995) (dismissing § 1983 claims for money damages against sheriff in official capacity pursuant to Eleventh Amendment immunity); *Boshell v. Walker County Sheriff*, 598 So.2d 843, 844 n.2 (Ala. 1992) (explaining that any claim for damages under § 1983 against a sheriff in his official capacity is barred by the Eleventh Amendment).

claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity." *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1430 (11th Cir. 1997); *see also McMillian v. Johnson*, 101 F.3d 1363, 1365 (11th Cir. 1996) ("a claim against an Alabama sheriff in his individual capacity is barred by the doctrine of sovereign immunity," even if such claim is based on malicious or intentional wrongdoing); *Cobb v. Marshall*, 481 F. Supp.2d 1248, 1261 (M.D. Ala. 2007) (holding that, where an Alabama sheriff is sued for money damages in his individual capacity for state-law claims, that defendant is fully shielded from liability by § 14 immunity); *Anderson v. Greene*, 2005 WL 1971116, *9 (S.D. Ala. Aug. 16, 2005) (observing that binding authorities interpret Alabama law as declaring that "sheriffs and their deputies are absolutely immune from state law claims in their individual and official capacities, even if they are sued for actions that are malicious, intentional or otherwise outside the scope of their authority").

Faced with this unbroken line of precedent, plaintiffs seek to import the exceptions for State-agent immunity (which allow state agents to be sued for willful, malicious, and intentional misconduct) into the Section 14 sovereign immunity realm. According to the Cobbs, because the misconduct of which they accuse Greene, to-wit, lying to a grand jury, involves willful acts, State immunity cannot attach. This argument fails as a matter of law. Alabama courts consistently "distinguish between the standards applied to those state agents or employees whose positions exist by virtue of legislative pronouncement and those who serve as the constitutional officers of this State." *Davis*, 930 So.2d at 500. The State-agent immunity rule restated in *Ex parte Cranman*, 792 So.2d 392 (Ala. 2000), and its progeny applies to persons in the former category; however, the much more expansive State immunity under Section 14 applies to persons in the latter category. Under Alabama law, sheriffs and deputy sheriffs unquestionably fall into the second category, not the first. *See Davis*, 930 So.2d at 501 & n.6 (observing that State-agent immunity is inapplicable to a deputy sheriff, whose immunity derives from his performance of responsibilities as an adjunct to a constitutional officer); *Ex parte Purvis*, 689 So.2d 794, 795-96 (Ala. 1996) (refusing to engraft exceptions to State-agent immunity for willful, malicious or bad-faith conduct onto Section 14 immunity to which sheriffs and deputy sheriffs are entitled). Accordingly, plaintiffs' allegations that defendants' misconduct in this case was malicious and willful are not enough to extract the state-law individual capacity claims

from the ambit of State immunity.  *See, e.g., Cobb*, 481 F. Supp.2d at 1260 (under binding Eleventh Circuit precedent, "the wall of Section 14 immunity is impenetrable even in the face of allegations that the state constitutional officer acted maliciously and intentionally").[6]

In light of the foregoing, the undersigned concludes that defendants Hawsey and Greene are entitled to State immunity under the Alabama Constitution for the Cobbs' state-law claims against them in their individual capacities, as a matter of law, notwithstanding plaintiffs' allegations of willful or malicious misconduct.  Those claims are **dismissed**.

> ### C.     *Section 1983 Individual Capacity Claims.*

Defendants also seek dismissal of plaintiffs' § 1983 claims against them in their individual capacities.  In that regard, defendants correctly point out that "Section 1983 creates no substantive rights; it merely provides a remedy for deprivations of federal statutory and constitutional rights."  *Almand v. DeKalb County*, 103 F.3d 1510, 1512 (11th Cir. 1997); *see also City of Hialeah, Fla. v. Rojas*, 311 F.3d 1096, 1103 n.1 (11th Cir. 2002) (same).  This point is uncontroversial and plaintiffs readily concede its validity.  However, plaintiffs counter that they are not seeking to hold defendants liable on that basis, but that their Complaint instead alleges "that the Defendant[s] violated the constitutional and/or statutory rights afforded the Plaintiffs under the Fourteenth Amendment and/or 42 U.S.C. § 1983. ... Plaintiffs claim that § 1983 provides them with a remedy for violation of their substantive rights, namely not to be charged, arrested and prosecuted on false testimony and evidence."  (Response (doc. 8), at 9-10.)  While such allegations may well be plaintiffs' intent, they are not what the Cobbs pleaded in their Complaint.  The Section 1983 claim set forth in Count Four never mentions the Fourteenth Amendment or any other constitutional or statutory source of the rights that plaintiffs seek to

---

[6]     The only exceptions to the sovereign immunity of sheriffs under Section 14 arise in equitable actions seeking to compel a sheriff to perform his duties; to compel him to perform ministerial acts; to enjoin him from enforcing unconstitutional laws; to enjoin him from acting in bad faith, fraudulently, beyond his authority or under mistaken interpretation of the law; or to seek construction of a statute under the Declaratory Judgment Act as to which the sheriff is a necessary party.  *See Davis*, 930 So.2d at 501.  None of these exceptions apply when plaintiffs seek only monetary damages, as is the case here.  *See id.*; *Shaw v. Coosa County Com'n*, 434 F. Supp.2d 1179, 1195 (M.D. Ala. 2005) ("These exceptions manifestly do not apply where a sheriff is being sued for money damages, rather than for injunctive relief.").

vindicate.  Instead, Count Four ascribes negligence to Hawsey in hiring, training and supervising Greene; states that Hawsey and Greene "knowingly presented or allowed the presentation of false testimony to the Grand Jury" under color of law; and alleges in conclusory terms that "these actions were contrary to the provisions of 42 U.S.C. § 1983."  (Complaint, ¶¶ 25-29.)

The fundamental problem with the vagueness of Count Four of the Complaint is that it renders it inordinately difficult for defendants to evaluate and litigate their qualified immunity defense.  "Heightened pleading is the law of this circuit when § 1983 claims are asserted against government officials in their individual capacities."  *Laurie v. Alabama Court of Criminal Appeals*, 256 F.3d 1266, 1275-76 (11th Cir. 2001) (citation omitted).  Without some specificity as to what the alleged deprivation was and what constitutional or statutory rights were allegedly violated, defendants are effectively shooting in the dark at a target they cannot see.  This state of affairs impedes the prompt, expeditious resolution of qualified immunity issues as required by Circuit precedent.  *See, e.g., McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007) ("In order to spare officials who are entitled to immunity from the burden of litigation, the availability of qualified immunity should be evaluated early in the proceedings.").  Plaintiffs' apparent strategy of pleading their case in such a manner as to keep the defendants and the Court guessing as to what the alleged deprivation was and what specific rights were purportedly deprived also contravenes basic requirements for § 1983 actions.  *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807 (1994) (when pleading a § 1983 claim, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed").[7]  In *GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998), the Eleventh Circuit confronted a similar pleading, wherein "it is unclear from the complaint exactly which of [plaintiff]'s

---

[7]        *See also Morin v. Moore*, 309 F.3d 316, 321 (5th Cir. 2002) (to plead a § 1983 claim, plaintiff must allege a violation of a right secured by the Constitution or laws of the United States); *Trautvetter v. Quick*, 916 F.2d 1140, 1148 (7th Cir. 1990) ("we note that § 1983 provides a remedy for deprivations of *specific* constitutional rights, not generalized allegations of constitutional deprivations"); *Hunt v. City of Mulberry*, 173 F. Supp.2d 1288, 1292 (M.D. Fla. 2001) ("In addition to identifying the constitutional right at issue, a Section 1983 complaint must be well-pled."); *Beck v. City of Durham*, 129 F. Supp.2d 844, 849-50 (M.D.N.C. 2000) (§ 1983 claim fails to state a claim where complaint does not identify any right, privilege or immunity secured by a provision of the Constitution or laws of the United States that has been violated).

constitutional rights it feels the defendants have violated."  *Id.* at 1368.  The *GJR* panel concluded that the district court erred in divining an equal protection claim where none was evident on the face of the complaint.  In particular, *GJR* found, the district court's approach disregarded the heightened pleading requirement in § 1983 cases and violated the principle that "[a] district court may not infer claims other than those that plainly appear on the face of the complaint to defeat a defense of qualified immunity."  *Id.* at 1369; *see also Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (in civil rights cases involving defense of qualified immunity, a complaint will be dismissed as insufficient where its allegations are vague and conclusory).

Simply put, it is impossible to glean from the vague Complaint exactly how the Cobbs contend that defendants violated their constitutional rights, or what the alleged deprivation was. In its present form, the Complaint states only that Hawsey was negligent in hiring, training and supervising Greene, and that both defendants knowingly presented or allowed presentation of false grand jury testimony that culminated in plaintiffs' indictment, all "contrary to the provisions of 42 U.S.C. § 1983" in unspecified ways.  (Complaint, ¶¶ 25-29.)  As pleaded, the Complaint might be logically construed as pursuing any number of different constitutional deprivations.  These defendants should not have to hypothesize as to the constitutional basis for plaintiffs' § 1983 claim, and it is unfair to expect them to formulate a qualified immunity defense (or to evaluate whether such a defense exists) in the face of such ambiguity.  More to the point, *GJR Investments* clearly forbids this Court from speculating or trying to connect the dots to conjure up specific theories of constitutional deprivation that are not set forth on the face of the pleading.  Accordingly, plaintiffs are hereby **ordered**, on or before **August 3, 2007**, to file an Amended Complaint amplifying and explaining the legal basis of Count Four.  At a minimum, the amendment must identify the particular right or rights that the Cobbs allege were violated by each defendant, the constitutional basis or bases for such right(s), and the basic facts underlying such claim.  Failure to comply with this requirement in a timely manner will result in dismissal of this action for failure to prosecute.

## IV.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.   Defendants' Motion to File Reply Brief Out of Time (doc. 9) is **granted**.

2.      Defendants Tracy Hawsey and John Greene's Motion to Dismiss (doc. 2) is **granted in part, and denied in part**.  The Motion is **granted** with respect to plaintiffs' state-law claims (Counts One, Two and Three), and those claims are **dismissed** in their entirety, including all state-law claims against defendants in both their individual and their official capacities.  The Motion is further **granted** with respect to plaintiffs' federal claims (Count Four) against defendants in their official capacities, and that aspect of Count Four is **dismissed**.  The Motion is **denied** with respect to plaintiffs' federal claims (Count Four) against defendants in their individual capacities, subject to paragraph 3, *infra*.

3.      Pursuant to the terms of this Order, plaintiffs are **ordered**, on or before **August 3, 2007**, to file an Amended Complaint amplifying and explaining the legal basis of Count Four.  At a minimum, the amendment must identify the particular right or rights that the Cobbs allege were violated by each defendant, the constitutional basis or bases for such right(s), and the basic facts underlying such claim.[8]  **Failure to comply with this requirement in a timely manner will result in dismissal of this action for failure to prosecute.**  Defendants' responsive pleading to the Amended Complaint must be filed on or before **August 17, 2007**.

DONE and ORDERED this 20th day of July, 2007.


                                        s/ WILLIAM H. STEELE
                                        UNITED STATES DISTRICT JUDGE

---

[8]      The Amended Complaint should be drafted as a complete, freestanding pleading, rather than simply an excerpt or supplement.  In other words, the Amended Complaint must be a unified, integrated document that can be read in its entirety without reference to the previous iteration of the Complaint.